**Theresa GIBSON, et al.,
Plaintiffs-Appellees,**

v.

**GARY HOUSING AUTHORITY,
Defendant-Appellant,**

**Gulf Insurance Company, Intervenor.**

**No. 83–3306.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1984.

Decided Jan. 25, 1985.

Rehearing and Rehearing En Banc
Denied March 5, 1985.

William E. Davis, W. Henry Walker & Assoc., East Chicago, Ind., for plaintiffs-appellees.

T. Sherman McClean, Stults, Custer, Kutansky & McClean, Gary, Ind., Albert C. Hand, Hand, Muenich & Wilk, Highland, Ind., for defendant-appellant.

Before CUMMINGS, Chief Judge and BAUER, Circuit Judge, and DUMBAULD *, Senior District Judge.

---

* The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, sitting by designation.

1. Inasmuch as the parties agreed to trial before the magistrate, we have no occasion to examine appellant's argument regarding unconstitutionality of 28 U.S.C. § 636(c), such agreement serv-

DUMBAULD, Senior District Judge.

■ Appellant, Gary Housing Authority (GHA), appeals from a judgment entered by a United States magistrate [1] upon a jury verdict for two million dollars in a diversity action for damages by reason of serious injury to Theresa Gibson, a minor, caused by a fire allegedly resulting from an unsafe electrical outlet in an apartment rented by Theresa's mother under a written lease with appellant Housing Authority. For reasons hereinafter elaborated we affirm the District Court's judgment, limited and reduced to the amount of $300,000.00 in accordance with provisions of the Indiana Tort Claims Act. Plaintiffs' pleadings relied on three theories: negligence, breach of implied warranty of habitability, and breach of contractual undertakings allegedly arising out of the lease.

■ In essence we regard the case at bar as a typical personal injury case, sounding in tort. Plaintiffs' counsel have appropriately exercised ingenuity in developing other theories to avoid the statutory limit of damages available for a tort claim, but we reject those supplemental theories as untenable under the circumstances of the case.

Since the Gary Housing Authority was a federally regulated and subsidized entity under the supervision of the Department of Housing and Urban Development (HUD), we may put aside the warranty of habitability theory on the authority of *Alexander v. HUD*, 555 F.2d 166, 170–71 (7th Cir. 1977).

The theory of breach of covenants in the lease is likewise not viable. The lease, executed January 24, 1974, at Gary, Indiana, is on a standard HUD form. Paragraph 7(h) prohibits tenant from making any alterations, installations or improvement without GHA's prior consent. Para-

ing as the equivalent of a consent decree (familiar in antitrust practice) or of voluntary arbitration. The constitutionality of the statute was upheld in a thorough en banc opinion by Judge Kennedy in *Pacemaker Diagnostic Clinic v. Instromedix*, 725 F.2d 537, 542–43 (9th Cir.1984).

graph 8(a)(2) provides that tenant shall not be responsible for the cost of repairs resulting from ordinary wear and tear. Paragraph 8(b)(2) requires GHA to "make all necessary repairs, replacements, alterations and improvements" with "reasonable promptness." When a repair pertains to a "defect in the premises which is hazardous to life, health and safety" it must be made or reasonable temporary alternative accommodations must be offered to the tenant within 72 hours. If GHA could have corrected the defect within 72 hours tenant's rent abates during the entire period of the defect while tenant resides in the unrepaired dwelling. These seem to be the only provisions of the lease pertaining to repairs. The testimony shows that from the beginning of the tenancy there were electrical outlets with the plate covers off and wires were exposed. There had been a fire in the apartment before the Gibsons moved in.

On the day of the fire which injured Theresa, her mother was at work. One son was in East Chicago visiting his father, then separated from the mother.[2] Nine of the ten children were at home, Patricia, the oldest, aged 15, being in charge. One of the boys smelled smoke and saw sparks from an uncovered outlet. The fire spread. Patricia got the children out of the house, except that it was overlooked that Theresa, then an infant two years old, was still in the house. Later firemen rescued her but she suffered serious burns and scarring over the upper half of her body.

The magistrate's opinion of June 2, 1983, concedes that there are no Indiana cases deciding whether a governmental entity may be sued for personal injuries by reason of a breach of a duty to repair contained in a lease. In view of the policy limiting damages in tort actions with respect to which governmental immunity is waived by the statute, it would be inappropriate for federal courts to speculate upon an issue of such fundamental importance without a greater measure of guidance from the state courts than is provided by the non-governmental cases relied on by the magistrate. As stated in *Loucks v. Star City Glass Co.*, 551 F.2d 745, 746 (7th Cir.1977), "it is not our province as a federal court to fashion for Illinois [*lege* Indiana] what we are certain many would say was a wise and progressive social policy." There would be too great a danger of circumventing state public policy by the simple subterfuge of permitting a plaintiff to "assumpsit bring and God-like waive the tort." [3]

It is agreed by all parties that damages on Theresa's tort claim are limited by statute to $300,000.[4]

Conflicting evidence with respect to causation of her injuries has been resolved by jury verdict. Plaintiff's evidence sufficed to permit the jury to find that the electrical outlets had deteriorated as a result of a previous fire; that sparks were emitted without any appliance being plugged in; that on the day of the fire the only appliance plugged in was the television set (not a fan with a frayed cord as defendant

---

**2.** Later the parents were reunited and moved to East Chicago Heights, Illinois. Thus diversity of citizenship existed when the original complaint was filed. By a subsequent amendment breach of Paragraph 8(b)(2) of the lease was alleged. It is not clear from the record how the theory of implied warranty of habitability was injected into the case.

**3.** "Thoughts much too deep for tears pervade the Court, When I assumpsit bring and, godlike, waive the tort." *Verschures Creameries, Ltd. v. Hull & Netherlands Steamship Co. Ltd.* [1921] 2 K.B. 608, 611. The lines are from "The Circuiteers, An Eclogue," by An Inner Templar (John Leycester Adolphus, the reporter). See also 1 L.Q.R. at 233 (1885).

**4.** I.C. 34–4–16.5–4 provides:

The combined aggregate liability of all governmental entities and of all public employees, acting within the scope of their employment and not excluded from liability under section 3 [34–4–16.5–3] of this chapter, does not exceed Three Hundred Thousand Dollars [$300,000] for injury to or death of one [1] person in any one [1] occurrence and does not exceed Five Million dollars [5,000,000] for injury to or death of all persons in that occurrence. A governmental entity is not liable for punitive damages.

contended); that defendant had repeatedly been notified of the defective condition and requested to repair it, but had not done so; that the fire was caused by defendant's negligence and not by any contributory negligence by Theresa's mother or siblings, or by reason of lack of parental supervision by her absent mother and father. The jury's verdict in favor of Theresa is amply supported by substantial evidence. It must be moulded, however, by being reduced in amount to reflect the statutory $300,000.00 limitation established by Indiana law.

The judgment of the District Court is modified by reducing the amount awarded to $300,000.00, and as so modified is

AFFIRMED.