KINGSTON SQUARE TENANTS ASSO-
CIATION, Alma Jones, Vanessa Myr-
ick, Mary Ayden, Mary Dicks, Cora El-
liott, Betty Golden, Rosa Prescott, Ro-
berta Williams, Loretta Wright, Earnes-
tine Young, Beverly Lewis, Curtis
Brown, Hanah Bailey, Betty Brown, Ju-
lia Brown, and Mary Ann Clarke, indi-
vidually and on behalf of all others
similarly situated, Plaintiffs,

v.

TUSKEGEE GARDENS, LTD., Stephen
Moses, Partnership Investor Services,
Inc., National Investment Development
Corporation, Housing Resources
Management, Inc., Management Assist-
ance Group, Inc., Millwood Housing
Fund, Ltd., A. Bruce Rozet, Deane Earl
Ross, Multi–Prop Services, Inc. and
Does 1–100, Defendants.

No. 91–6029–CIV.

United States District Court,
S.D. Florida.

May 26, 1992.

Sharon Diaz, Legal Aid Service of Broward County, Ft. Lauderdale, Fla., for plaintiffs.

Doug Reynolds of Cox & Reynolds, P.A., Ft. Lauderdale, Fla., for Tuskegee Gardens, Ltd.

Mike Shievold, and Marvin Nodel of Conroy, Simberg & Lewis, P.A., Ft. Lauderdale, Fla., for Multi–Prop.

Scott Sarason of Rumberger, Kirk, Caldwell & Weshsler, P.A., Miami, Fla., for A. Bruce Rozet, Deane Earl Ross, and Management Assistance Group, Inc.

## AMENDED ORDER ON MOTIONS TO DISMISS

PAINE, District Judge.

This matter comes before the court on the Defendant's, Tuskegee Gardens, Ltd. ("Tuskegee"), Motion to Dismiss, to Strike or in the Alternative for More Definite Statement (DE 20), the Defendants', A. Bruce Rozet ("Rozet"), Deane Earl Ross ("Ross") and the Management Assistant Group, Inc. ("MAGI"), Motion to Dismiss (DE 31) and the Defendant's, Multi–Prop Services, Inc. ("Multi–Prop"), Motion to Dismiss, To Strike, or in the Alternative, for More Definite Statement (DE 46). Having reviewed the record, the memoranda of counsel and relevant authorities, the court enters the following order.

## I. BACKGROUND

### In the Beginning ... There was Kingston

The Kingston Square Apartments ("Kingston") in Broward County, Florida, has received financial assistance pursuant to Section 236 of the National Housing Act ("NHA"), 12 U.S.C. § 1715z–1, and Section 8 of the United States Housing Act of 1937 ("USHA"), as amended, 42 U.S.C. § 1437 et seq. On December 8, 1988, the tenants residing at Kingston commenced a class action suit captioned *Kingston Square Tenants Association, et al. v. Tuskegee Gardens, Ltd. et al.*, Case No. 88–6957–CIV–PAINE ("*Kingston I*"), on behalf of themselves and persons similarly situated,

seeking primarily injunctive relief from two different sets of Defendants. The first group, the "private" Defendants, included Tuskegee, the former owners of Kingston, as well as, Multi–Prop and Housing Resources Management, Inc. ("HRM"), the former managing agents of Kingston. The other group, the "federal" Defendants, included the United States Department of Housing and Urban Development ("HUD"), Samuel Pierce, former Secretary of HUD, and James T. Chaplin, Director of HUD's regional office in Jacksonville, Florida.

In their Complaint, the Plaintiffs alleged that the Defendants allowed the physical condition of Kingston to deteriorate, posing a danger to their health and well being. It was further alleged that although HUD conducted numerous physical inspections of Kingston, found serious defects, and ordered the private Defendants to remedy the defects, HUD's orders were not complied with. The tenants asked the court to certify the proposed class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure and declare that the actions of the Defendants violated numerous federal statutes and regulations. In addition, the Plaintiffs asked the court to: (1) declare the private Defendants in regulatory default; (2) take control of Kingston; (3) operate the housing facility in accordance with federal and state law; (4) apply federal subsidies to conduct needed repairs; and (5) stop payment of all federal subsidies to the private Defendants. Monetary damages were also sought in an amount equal to the diminished value of Kingston from the beginning of the Plaintiffs' tenancies until the date suit was filed.

Most of these requests were satisfied or rendered moot when the federal Defendants settled with the Plaintiffs, who agreed to foreclose on Kingston, sell it, and order the new owner to adhere to HUD regulations and guidelines. On July 10, 1989, Kingston was sold at a foreclosure sale to Michael's Development, Inc., a New Jersey Corporation, thereby terminating the ownership and management interests of Tuskegee, Multi–Prop and HRM.

By Order dated October 29, 1990, the court granted the Plaintiffs' Motion for Class Certification and certified a class consisting of individuals residing at Kingston at the commencement of suit. That same Order also denied the Plaintiffs' Motion for Leave to File an Amended Complaint on the grounds of bad faith and delay, amounting to a possible violation of Federal Rule of Civil Procedure 11 by Plaintiffs' counsel. At that time it was noted that the proposed Second Amended Complaint was a substantial departure from the original Complaint in that it would radically convert the action from one seeking injunctive relief, to one based in tort, seeking monetary and punitive damages. The undersigned described the Plaintiffs' potential motivation for their change in course:

> The Plaintiffs' have not provided the court with sufficient explanation for their delay in light of the fact that ... they were aware of the parties' relationship and the facts and circumstances relating to their proposed causes of action years prior to filing their original Complaint. Perhaps the fact that Plaintiffs have been successful in gaining injunctive relief from the federal Defendants, is the reason they now seek to change course and recover monetary and punitive damages from the private Defendants and six new Defendants.

### End Run: The Son of Kingston

Apparently not pleased with the ruling,[1] the Plaintiffs, on January 16, 1991, instituted the present lawsuit ("*Kingston II*"), identical in most respects to the Second Amended Complaint the court rejected in Kingston I. Originally assigned by random allocation to another judge in this district, the case was transferred to the undersigned in accordance Rule 6(C) of the General Rules of the United States District Court for the Southern District of Florida.[2] Two days after commencing the new suit, the Plaintiffs, on January 18, 1991, filed an Emergency Motion for Voluntary Dismissal Without Prejudice, stating that the injunctive relief originally sought in *Kingston I* had been obtained as the renovation of the housing complex by its new owners was complete. The court granted voluntary dismissal. Thereafter, the Defendants in *Kingston II* filed Motions to Dismiss, raising numerous grounds for dismissal, including an attack on the court's *in personam* jurisdiction.

## II. ANALYSIS

### *To 12(b) or Not to 12(b), That is the Question*

Pre–Answer Motions, such as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b), or the related Motion for More Definite Statement, may raise two distinct issues: (1) whether the Plaintiff has stated his or her purported claim with sufficient detail; and (2) whether the claim as stated is recognized by the law.

As to the first issue, that is, factual detail, the Federal Rules of Civil Procedure are very liberal. Rule 8(a) provides that the Complaint need only contain "a short and plain statement of the claim...." "All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Foods & Commercial Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir.1989) (collecting cases). The parties may, through discovery, inquire further into the details underlying the claim. *Bazal v. Belford Trucking Co., Inc.*, 442 F.Supp. 1089, 1102 (S.D.Fla.1977); *see generally* 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1202 (2d ed. 1990).

> Whenever an action or proceeding is filed in the Court which involves subject matter which is a material part of the subject matter of another action or proceeding then before this Court ... the newly filed action or proceeding should be transferred to the judge to whom the low numbered action or proceeding is assigned.

---

**1.** Following the ruling, counsel for the Plaintiffs engaged in *ex parte* telephonic communication with chambers, wherein she unjustifiably accused the undersigned of abdicating his judicial responsibilities to his law clerk. Such allegations are unfounded and this type of behavior shall not be tolerated in the future.

**2.** Rule 6(C) provides, in relevant part, that:

As to the viability of a cause of action, the court must first accept all of the Plaintiff's allegations as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Thomas v. Burlington Industries, Inc.*, 769 F.Supp. 368, 370 (S.D.Fla.1991). Consideration of matters beyond the four corners of the Complaint is improper. *Milburn v. United States*, 734 F.2d 762 (11th Cir.1984); *Thomas*, 769 F.Supp. at 370. A Motion to Dismiss should not be granted unless the Plaintiff can prove no set of facts in support of his claim entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Thus, a Complaint may not be dismissed because the Plaintiff's claims do not support the legal theories on which he relies because the court must determine if the allegations form a basis for relief on any possible theory. *See Robertson v. Johnston*, 376 F.2d 43 (5th Cir.1967).[3]

### *Judicial Fourplay: Cort v. Ash*

The Defendants contend that Counts I and V of the Complaint should be dismissed insofar as the statutes and regulations upon which these claims are based do not provide a private cause of action. Count I seeks damages as a result of the Defendants' alleged violation of 12 U.S.C. § 1715z–1, a statute authorizing periodic interest reduction payments on behalf of the owner of a low income rental housing project, as well as numerous regulations and HUD handbooks promulgated thereunder. Count V sets forth a claim for the Defendants' alleged failure to maintain the physical condition of Kingston in compliance with the USHA and various regulations established in accordance with that statute.

In *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), the United States Supreme Court set forth four criteria used in determining whether a private right of action may be properly implied in a federal statute: (1) does the statute create a federal right in favor of the Plaintiff?; (2) does legislative intent, explicitly or implicitly, create such a private remedy or deny one?; (3) is it consistent with the purpose of the statute to imply such a remedy for the Plaintiff?; and (4) is the cause of action relegated to the states, so that inferring a right based solely on federal law would be inappropriate?

Subsequent cases have recognized that these four factors are not entitled to equal weight. In *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) the Supreme Court noted that, in applying the *Cort* criteria, the second factor (legislative intent) is the touchstone:

> The intent of Congress remains the ultimate issue, however, and 'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exists.'

*Id.* at 179, 108 S.Ct. at 516 (quoting *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981).

Applying this standard, the Eleventh Circuit, relying on *Perry v. Housing Authority of Charleston*, 664 F.2d 1210 (4th Cir. 1981), had previously determined that "tenants in Federal Public Housing have neither a section 1983 [42 U.S.C. § 1983] cause of action nor an implied right of action to enforce the rent provisions of the Brooke Amendment [42 U.S.C. § 1437a]." *Nelson v. Greater Gadsden Housing Authority*, 802 F.2d 405, 407 (11th Cir.1986); *Brown v. Housing Authority of City of McRae*, 784 F.2d 1533, 1539 (11th Cir.1986), *rev'd*, 820 F.2d 350 (11th Cir.1987). That portion of *Nelson* and *Brown* concerning § 1983 claims, however, was subsequently overruled by the United States Supreme Court. *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). In *Wright*, the Supreme Court held that nothing in the USHA or the Brooke Amendment evi-

**3.** The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

denced that Congress intended to preclude public housing tenants from bringing a § 1983 action against local housing authorities to enforce compliance of said statutes. *Id.* at 429, 107 S.Ct. at 773.

■ In the present case, however, the Plaintiffs do not seek to enforce their rights under either Section 1983 or the Brooke Amendment. Rather, they rely on the broader statutory and regulatory framework of national housing laws, which encompass a multitude of provisions that were addressed neither by the Eleventh Circuit in *Nelson* and *Brown*, nor by the Supreme Court in *Wright*. These decisions, nevertheless, are helpful in deciding the issue at hand.

Earlier, in *Kingston I*, this court conducted a lengthy analysis of the *Cort* factors and determined that conceivably the Plaintiffs could have an implied cause of action under federal housing laws. The court questioned, however, whether the claim could satisfy factors two and three of the *Cort* test, the legislative intent and statutory scheme criteria. In denying the Defendants' Motion to Dismiss, the undersigned recognized the following: (1) after *Wright* the area of law pertaining to implied private rights of action under the national housing laws was in a state of flux as well as confusion; (2) the United States Supreme Court may contemplate recognition of an implied cause of action under the USHA and the NHA; and (3) it could not be said that the Plaintiffs' allegations did not form the basis for relief on any possible theory.

### Talkin' 'Bout A Resolution

Although these propositions may still be true, the court concludes that, based on the facts of this case, no implicit private cause of action exists. While the Plaintiffs may have *some* remedy for the alleged wrong, *see infra*, they cannot bring an implied cause of action under federal housing statutes and regulations, which is simply not cognizable as a matter of law.[4] As stated

before, the question is still open whether the United States Supreme Court may recognize a cause of action under the USHA or the NHA. In fact the undersigned would appreciate that Court or the Eleventh Circuit's guidance on this issue. Until such time, the court must apply existing precedent to answer this difficult question.

In *Wright*, the Supreme Court reversed a decision of the Fourth Circuit which relied primarily on *Perry v. Housing Authority of Charleston*, 664 F.2d 1210 (4th Cir.1981). *Perry* held, *inter alia*, that low income housing tenants: (1) do not have an implicit cause of action for injunctive and declaratory relief under the USHA; (2) cannot bring a Section 1983 action against a city housing authority to enforce statutory violations; and (3) cannot enforce contracts between HUD and housing authorities on a third party beneficiary theory. Because *Wright* dealt exclusively with the issue of a private cause of action under Section 1983 and did not address whether a claim may be brought under the USHA and NHA and if tenants are third-party beneficiaries, *Perry*, because of its adoption by *Nelson* and *Brown*, is apparently still binding precedent in this Circuit.

In reaching this conclusion, it is noted that in *Hill v. Ogburn*, 812 F.2d 679, 681 (11th Cir.1987), a post-*Wright* decision, the Eleventh Circuit specifically declined to address the problem of a public housing tenants' right to sue for enforcement pursuant to the USHA. It left that matter and the viability of a third-party beneficiary action for the district court to resolve:

Given our determination on the section 1983 issue, we need not decide if the plaintiffs have an implied cause of action under the Housing Act. Nor is it necessary to consider plaintiffs' argument that they have enforceable rights as third-party beneficiaries of the ACC contract between HUD and the local housing authorities. The relief plaintiffs seek on the implied cause of action and third-party beneficiary theories is identical to

---

**4.** Unlike the cases previously discussed, the remedy of 42 U.S.C. § 1983 is *not* available to the Plaintiffs. No Defendant is alleged to have act-

ed "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...."

that which they seek under section 1983. Consequently, we leave those claims to be resolved by the district court should the plaintiffs' section 1983 claims be unsuccessful.

Assuming *arguendo* that the undersigned were to find an implied right to enforce the statutes and regulations at issue, the plain fact—which the parties have seemingly overlooked—remains that this suit is not an enforcement action seeking injunctive and declaratory relief. The Plaintiffs are not attempting to compel the Defendants to observe national housing laws through equitable means. Rather, they seek affirmative monetary recovery on the grounds that federal laws may have been violated in the past.

This appears to be an issue of first impression as none of the decisions provided by the parties, either published or unpublished, involved low income housing tenants suing solely for monetary damages under an implied cause of action. Additionally, no legislative support has been provided to advance the proposition that Congress intended to allow tenants of low income housing projects to file suits, pursuant to the USHA or NHA, against former private owners and operators of said facilities, exclusively for compensatory and punitive damages. "[T]he essential predicate for implication of a private remedy simply does not exist." *Thompson*, 484 U.S. at 179, 108 S.Ct. at 516.

The absence of Congressional intent may be explained by the fact that aggrieved housing tenants may be accorded their day in court and potential relief under common law breach of contract and tort theories. The undersigned, therefore, will not judicially legislate and "engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *California v. Sierra Club*, 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981). In short, the Plaintiffs do not have an implied right of action under the USHA, NHA or applicable federal regulations.

### Incidentally

For similar reasons Count II of the Plaintiffs' Complaint, their claim to monetary damages by virtue of their third-party beneficiary status of the HUD contract, must also be dismissed. Admittedly, the law in this Circuit is less than clear. In *Roberts v. Cameron–Brown Co.*, 556 F.2d 356, 360–61 (5th Cir.1977), it was held that a HUD handbook relating to the servicing of mortgages on federally assisted low income housing did not: (1) create a private cause of action under the Nation Housing Act in favor of the mortgagee; or (2) constitute a contract of which a mortgagor would be a third-party beneficiary. On the other hand, the panel in *Hill*, as noted before, specifically declined to answer the question. *Hill*, 812 F.2d at 681.

Authorities in other jurisdictions which have answered are split. *Compare Perry*, 664 F.2d at 1218; *Falzarano v. United States*, 607 F.2d 506, 511 (1st Cir.1979); *Harlib v. Lynn*, 511 F.2d 51, 55–56 (7th Cir.1975) (federally subsidized housing tenants are not third-party beneficiaries) *with Price v. Pierce*, 823 F.2d 1114, 1121 (7th Cir.1987); *Holbrook v. Pitt*, 643 F.2d 1261, 1269–73 (7th Cir.1981); *Concerned Tenants Assn. v. Indian Trails Apartments*, 496 F.Supp. 522 (N.D.Ill.1980); *Gonzalez v. St. Margaret's House Housing Dev. Fund*, 620 F.Supp. 806 (S.D.N.Y.1985) (tenants are third-party beneficiaries).

█ This court finds favor in those decisions which hold that low income tenants are not third-party beneficiaries for the purposes of enforcing contracts between HUD and housing authorities or operators. The Plaintiffs are, at best, incidental, rather than intended, beneficiaries of the contracts in question. Moreover, it is again noted Count II does not seek *enforcement* of contract terms, but tenuously maintains an entitlement to monetary and compensatory damages arising from the alleged breach of said contracts. Since there is no indication that Congress intended to afford public housing tenants such a remedy, Count II of the Complaint is dismissed.

### Bedbugs and Ballyhoo

The Defendants seek dismissal of Count III of the Plaintiffs' Complaint, which sets

forth a breach of implied warranty of habitability claim under state law, on the grounds that: (1) the only remedy available under this theory is termination of the lease agreement; and (2) the Plaintiffs have failed to plead compliance with the notice requirement of Florida Statute Section 83.56(1). Both arguments, however, are without merit.

■ First, Florida has adopted an implied warranty of habitability which places an affirmative duty of repair on the landlord. Fla.Stat. § 83.51 (1991). Contrary to the Defendants' position, damages for violation of the warranty, are not limited just to cessation of the lease. "When the landlord fails to keep the premises in good repair, the tenant is permitted after notice, *either* to terminate the rental agreement and vacate *or* remain in possession and deduct that portion of the rent caused by the landlord's noncompliance." *Mansur v. Eubanks*, 368 So.2d 645, 650 n. 11 (Fla. 1st Dist.Ct.App.1979) (Ervin, J., specially concurring) (citations omitted) (emphasis added), *quashed and remanded on other grounds*, 401 So.2d 1328, 1330 (Fla.1981) (citing Ervin concurrence with approval).

■ With respect to the second argument, written demand is not required where notice is given and the landlord has "knowledge of the defects and its duty to make repairs." *Zais v. CF West Florida, Inc.*, 505 So.2d 577 (Fla. 4th Dist.Ct.App. 1987). Based on the four corners of the Complaint, and taking those allegations as true, it cannot be determined whether written demand was given to the Defendants or whether they were on notice of the claimed defects at Kingston. Consequently, this issue may be more properly raised as an affirmative defense or as the basis of a Motion for Summary Judgment.

### Alexander the Great

■ The Defendants next contend that Count IV of Complaint, the Plaintiffs' cause of action for breach of an implied federal warranty of habitability, should be dismissed as such relief does not exist in leases pertaining to federally subsidized public housing units. They point out that

the leading case on this issue, *Alexander v. United States Dept. of Hous. and Urban Dev.*, 555 F.2d 166, 171 (7th Cir.1977), declined to imply a federal warranty of habitability in HUD leases because there was no indication in the USHA that Congress intended to afford public housing tenants such a remedy. In refusing to "judicially legislate" such a cause of action, the *Alexander* panel held that the establishment of a warranty in HUD leases was best left to the legislative branch:

> [w]e are not persuaded that such warranties should be implied in leases of dwelling units constructed and operated as public housing projects. In contrast to housing projects in the private sector, the construction and operation of public housing are projects established to effectuate a stated national policy 'to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income.' 42 U.S.C. § 1401. As such, the implication of a warranty of habitability in leases pertaining to public housing units is a warranty that the stated objectives of national policy have been and are being met. We feel that the establishment of any such warranty that national policy goals have been attained or that those goals are being maintained is best left to that branch of government which established the objectives.

*Id.*

The undersigned agrees with *Alexander* and those decisions which have adopted its logic. *See Gibson v. Gary Housing Auth.*, 754 F.2d 205, 206 (7th Cir.1985); *Federal Property Management Corp. v. Harris*, 603 F.2d 1226 (6th Cir.1979); *Perez v. United States*, 594 F.2d 280 (1st Cir.1979) (HUD under no affirmative duty to keep tenants safe). While other courts have recognized a federal common law warranty, they have limited remedies to *equitable enforcement* of lease terms to provide decent, safe and sanitary housing, not monetary damages designed to address a prior breach. *Conille v. Secretary of Housing and Urban Dev.*, 840 F.2d 105, 117 (1st Cir.1988); *Chase v. Theodore Mayer Bros.*, 592

F.Supp. 90, 93 (S.D.Ohio 1983); *Techer v. Roberts–Harris*, 83 F.R.D. 124 (D.Conn. 1979).

## Into the Breach

The Defendants seek dismissal of the breach of lease claim, because it names persons other than those Defendants who allegedly entered into the lease agreement, such as Ross, Rozet and MAGI. But given the fact that the Plaintiffs are asserting "alter ego" liability with respect to the additional parties, the propriety of these allegations cannot be determined at this time.[5] Obviously, if it is shown at trial that certain Defendants did not breach the leases at issue, let alone enter into them, they will not be held liable.

## Playing by the Rules

■ The Defendants assert that the Plaintiffs' cause of action for violation of the Deceptive and Unfair Trade Practices Act ("Act"), Florida Statutes §§ 501.201–501.213, should be dismissed since the lease of real property does not constitute a "consumer transaction" within the meaning of the Act. The undersigned disagrees. Although the plain language of the definition of a "consumer transaction" does not appear to include the lease of real property,[6] Florida Statute § 501.205 grants the Florida Department of Legal Affairs the authority to promulgate rules consistent with the Act. One of these rules, Florida Administrative Code Section 2–11.003, states that "[i]t shall be an unfair or deceptive act or practice for a landlord to fail to maintain the premises in substantial compliance with all applicable building, housing and health codes...."

**5.** Ross, Rozet and MAGI also contend that the breach of lease claim should be dismissed, as they claim that under Florida law, a contract action may be brought only against a corporate officer, director or shareholder signing in their individual capacity. This argument overlooks allegations contained in the Complaint that Ross and Rozet were *personally* involved, through alter-ego sham corporations, in the activities which gave rise to the Plaintiffs' injuries.

**6.** Florida Statute § 501.203(1) provides:

## For Whom the Southern Bell Tolls

The Defendants contend that the Plaintiffs' fraud claim, Count VIII, negligence and wanton conduct claim, Count IX, and nuisance claim, Count X, should be dismissed because under Florida law a party to a contract cannot raise tort claims to recover solely economic damage. In addition, they attack Count VIII on the grounds that the Plaintiffs' have failed to alleged fraud with sufficient particularity.

■ As for the first contention, the court agrees with the Defendants. The "economic loss theory" recognizes that where a contract creates an underlying duty and delineates the parties' rights and liabilities, contract principles should apply to a claimed breach of duty. *Interstate · Sec. Corp. v. Hayes Corp.*, 920 F.2d 769, 777 n. 12 (11th Cir.1991). In *AFM Corp. v. Southern Bell Tel. & Tel.*, 515 So.2d 180, 181 (Fla.1987), the Florida Supreme Court adopted the "economic loss theory," holding that a party to a contract may not pursue a tort claim, solely for economic losses, unless the breaching party has committed a tort separate or independent of the act of breach. *See also Strickland–Collins Const. v. Barnett Bank*, 545 So.2d 476, 477 (Fla.2d Dist.Ct.App.1989) ("In the absence of personal injuries or property damage to property outside the contract, Florida will not create a duty in tort to permit recovery of economic losses where the litigants have allocated the various risks of their bargain by contract.") Consequently, the Plaintiffs' causes of action for negligence, wanton conduct and nuisance must be dismissed, as these claims are not separate and independent of the

"Consumer transaction" means a sale, lease, assignment, award by chance, or other disposition of an item of goods, a consumer service, or an intangible to an individual for purposes that are primarily personal, family, or household or that relate to a business opportunity that requires both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged, or a solicitation by a supplier with respect to any of these dispositions.

Defendants' alleged breach of duty under the lease terms.

Similarly, an action for fraud, if dependent on the performance of the lease obligation, is not actionable. *J. Batten Corp. v. Oakridge Investments 85, Ltd.*, 546 So.2d 68, 69 (Fla. 5th Dist.Ct.App.1989); *Williams Elec. Co., Inc. v. Honeywell, Inc.*, 772 F.Supp. 1225, 1237 (N.D.Fla.1991). Fraud in the inducement, however, as opposed to fraudulent breach of contract, is an independent tort for which compensatory damages may be recovered. *Burton v. Linotype Co.*, 556 So.2d 1126, 1128 (Fla. 3d Dist.Ct.App.1989); *Williams*, 772 F.Supp. at 1237. Consequently, Count VIII, the Plaintiffs' fraud claim, is not tolled by *Southern Bell*, to the extent that it is based on a fraud in the inducement theory.

With respect to the Defendants' other attack on Count VIII, the court notes that Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pleaded with particularity. "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Business Management Assoc.*, 847 F.2d 1505, 1511 (11th Cir.1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)).

Under Florida law, the essential elements of fraudulent misrepresentation include: (1) a false statement concerning a specific material fact; (2) a showing that the representor knew, or should have known, that the representation was false; (3) an intention that the representation induce another to act on it; and (4) consequent injury to the party acting in justifiable reliance on the representation. *Joiner v. McCullers*, 158 Fla. 562, 28 So.2d 823

(1947); *Royal Typewriter Co. v. Xerographic Supplies*, 719 F.2d 1092, 1103 (11th Cir.1983). The undersigned finds that these elements have been properly pled.[7]

### Damsels in Distress

In *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 279 (Fla.1985), the Florida Supreme Court held that an action for intentional infliction of emotional distress requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." In applying this standard, "the subjective response of the person who is the target of the actor's conduct is not to control the question of whether the tort occurred." *Ponton v. Scarfone*, 468 So.2d 1009, 1011 (Fla. 2d Dist.Ct.App.1985). "Rather, an evaluation of the claimed misconduct must be undertaken to determine, as objectively as is possible, whether it is 'atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Metropolitan*, 467 So.2d at 278. That burden falls on the court as this is a question of law, not fact. *Metropolitan*, 467 So.2d at 278.

Looking at the allegations contained in the Complaint, and considering them in a light most favorable to the Plaintiffs and as true, the court finds that the conduct alleged, *inter alia*, vermin infestation, leaking sewerage and dusty public areas, although possibly offensive to some civilized individuals, does not rise to the level contemplated by the Florida Supreme Court in *Metropolitan*.

Similarly, the undersigned holds that the Plaintiffs have not stated a legally cognizable claim for negligent infliction of emotional distress. Under Florida law, the prerequisites for recovery under this theory is different depending on whether the Plaintiff has suffered a physical impact from an external force. If there has been an impact, recovery is permitted

---

7. Based on the four corners of the Complaint the Plaintiffs' allegations satisfy the standard set forth in *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla.1984) for piercing the corporate veil and defeating the corporate Defendants, Ross, Rozet and MAGI, attack on the sufficiency of the pleadings. Whether the Plaintiffs can sustain their high burden of proof on this issue is left for another day and the finder of fact.

for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself. *Gilliam v. Stewart*, 291 So.2d 593 (Fla.1974). On the other hand, if the Plaintiff has not suffered an impact: (1) the mental distress must be manifested by physical injury; (2) the Plaintiff must be involved in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs; and (3) the Plaintiff must suffer the mental distress and accompanying physical impairment within a short time of the incident. *Champion v. Gray*, 478 So.2d 17, 19–20 (Fla.1985). As an additional caveat, recovery is not permitted "for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved." *Kirksey v. Jernigan*, 45 So.2d 188, 189 (Fla.1950); *see also Slocum v. Food Fair Stores of Florida*, 100 So.2d 396 (Fla.1958).[8]

▪ An examination of the Plaintiffs' Complaint reveals that it is devoid of any allegations concerning a physical personal injury as a result of the Defendants' actions. There is no tort separate and independent of the Defendants' alleged breach of leases. As a matter of law, therefore, the negligent infliction of emotional distress claim must be dismissed.

### RICO–Chet

The Defendants have also stated numerous grounds on which they seek to dismiss Counts XIII through XVII, the Plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, claims. Their first argument is that *Southern Bell* and the "economic loss rule" bar the RICO cause of actions inasmuch they are not independent and separate of the Plaintiffs' breach of lease claim.

▪ Although there is apparently no reported decision applying Florida law on this issue, a similar argument was rejected in *Vista Co. v. Columbia Pictures Indus-*

*tries, Inc.,* 725 F.Supp. 1286 (S.D.N.Y. 1989), wherein it was held that:

> Federal RICO claims, unlike claims for common law fraud, cannot be said to be redundant with a common law breach of contract claim. Congress' specific purposes for passing the RICO and mail fraud statutes, combined with the additional elements of these causes of action, negate this contention.

*Id.* at 1301.

The second ground on which dismissal is sought is the Defendants' assertion that the Plaintiffs lack standing to bring their RICO claims. To properly address this argument, the court must look at the civil remedies provided for under RICO. The relevant statute, 18 U.S.C. § 1964(c), provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fees.

▪ Interpreting § 1964(c), the United States Supreme Court has concluded that if a Defendant has engaged in pattern of forbidden racketeering activity, a Plaintiff has standing to sue only if "he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Thus, in order to have standing under RICO, the Plaintiff must show: (1) a violation of section 1962; (2) injury to business or property; and (3) that the violation caused the injury. *O'Malley v. O'Neill*, 887 F.2d 1557, 1561 (11th Cir.1989).

Based on these criteria, the Eleventh Circuit has taken a restrictive view of standing. For example, in *Grogan v. Platt*, 835 F.2d 844, 846 (11th Cir.1988), it held that the words "business or property" act to limit standing and noted that Congress

---

**8.** This is consistent with *Southern Bell* and the "economic loss theory," in that a claim in tort, solely for economic losses, is precluded unless the party breaching the contract has committed a tort distinguishable from or independent of the breach of contract.

could have made the scope of Section 1964(c) broader, it failed to do so:

> [I]f Congress had intended for the victims of predicate acts to recover for all types of injuries suffered, it would have drafted the statute to read: 'A person *injured* by reason of a violation of a section 1962 of this chapter may sue therefor....'

*Id.* (emphasis in original).

Similarly, this Circuit has strictly construed the causal connection predicate acts and the Plaintiff's injury. In *Morast v. Lance,* 807 F.2d 926, 933 (11th Cir.1987), it was held that an individual has standing to sue under section 1964(c) only if his injury flowed directly from the commission of the predicate acts. "This means that, when the alleged predicate act is mail or wire fraud, the plaintiff must have been a *target* of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme." *Pelletier v. Zweifel,* 921 F.2d 1465, 1499–1500 (11th Cir.1991) (emphasis added).

▪ After reviewing the allegations contained in Counts XIII through XVII, and the Plaintiffs' Case Statement,[9] the court concludes that the Plaintiffs lack standing to sue under RICO. The Plaintiffs contend, among other things, that Defendants individually and/or conspired together to submit false applications to HUD for Section 8 funds. These monthly applications were false in that they stated that the housing units at Kingston were "decent, safe and sanitary." HUD grant money was then allegedly used by the Defendants for purposes other than the repair and maintenance of Kingston causing the Plaintiffs to suffer from "deficient living conditions."

As stated previously, in order for the Plaintiffs to have standing they "must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme." *Pelletier,* 921 F.2d at 1499. Based on these allegations, however, it is HUD and not the Plaintiffs which would appear to have been the *target* of the alleged fraud.[10] The Plaintiffs, at most suffered incidentally as a result of any asserted scheme to defraud HUD in obtaining Section 8 funds. If the Plaintiffs' accusations are true, it should be the government which files suit to recover any funds which were fraudulently disbursed.[11]

### Stop Me if You Think That You've Heard This One Before

The Defendants next advance the familiar argument that the Plaintiffs' prayer for punitive damages should be stricken insofar as it fails to meet the pleading requirements of the Tort Reform Act, Fla.Stat. § 768.72 (1991).[12] The issue becomes whether § 768.72 is procedural or substantive in nature, since a federal court sitting

---

9. Under the current practice of this Judge, all parties filing RICO claims must file a RICO Case Statement. A copy of this Order is attached as Appendix A. The Eleventh Circuit has declined to express any opinion as to the propriety of such an Order. *O'Malley,* 887 F.2d at 1559 n. 1.

10. In reaching this conclusion the court does not reach a decision as to whether the Plaintiffs have suffered a loss of "property or business." Nevertheless, it is noted that in *Oscar v. University Students Co–Op. Ass'n,* 939 F.2d 808 (9th Cir.1991), on rehearing, 965 F.2d 783 (9th Cir. 1992), a decision which the Plaintiffs rely on, the Ninth Circuit held that, under California law, apartment tenants have a property interest in their apartments that would give rise to RICO standing. That panel held, as is the case here, that there was an insufficient showing as to proximate causation, that is, a connection between the diminished value of the leaseholds in question and the alleged predicate acts.

11. Perhaps the Plaintiffs could institute a *qui tam* action. *See generally United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493 (11th Cir.1991); *United States of America v. Christino Enriquez et al.,* No. 90–6105–CIV–PAINE, 1991 WL 236502, 1991 U.S. Dist LEXIS 14698 (S.D.Fla.Jul. 12, 1991).

12. Section 768.72 provides in part that:

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure.

in diversity action must apply federal law to matters of procedure and follow the substantive law of the forum state with respect to matters of substance. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The Federal Rules of Civil Procedure contemplate liberal notice pleading by the parties. Rule 8 merely requires that the complaining party provide "a short, plain statement of the claim showing that the pleader is entitled to relief," while Rule 9(g) provides that items of special damages, such as punitive damages, are to be specifically pleaded. On the other hand, Florida Statute § 768.72, which sets forth the pleading guidelines for alleging punitive damages pursuant to Florida law, represents a departure from the liberal requirement of notice pleading. It prohibits a claim for punitive damages unless there is evidence in the record or proffered by the Plaintiff which provides a reasonable basis for recovery.

In other cases, Defendants have advanced the familiar argument that the Florida Supreme Court in *Smith v. Dept. of Ins.,* 507 So.2d 1080 (Fla.1987) interpreted § 768.72 as being substantive law for the purposes of *Erie. See Citron v. Armstrong World Industries, Inc.,* 721 F.Supp. 1259 (S.D.Fla.1989); *Darlene Jones v. Wal–Mart et al.,* No. 90–14113–CIV–PAINE, 1991 WL 236503, 1991 U.S.Dist. LEXIS 16003 (S.D.Fla. Apr. 25, 1991). Admittedly this issue has been sharply disputed in Florida's district courts [13] and, indeed, in other district courts throughout the country regarding similar state statutes.[14] The undersigned is unaware of any appellate decision which has addressed the matter. "Indeed, because a district court's

decision of whether to apply a state punitive damage pleading rule is not immediately appealable, and because the district court's ruling would in all likelihood not affect the outcome of the litigation, appeal of such a ruling, though possible in some narrow contexts, has proven elusive as of yet." *Plantation Square,* 761 F.Supp. at 1573.

The Florida Supreme Court in *Smith* deemed § 768.72 "substantive" in the sense that the state legislature, by adopting this portion of the Tort Reform Act, did not encroach on the court's rule-making authority. The *Smith* court did not, however, consider the substantive-procedural distinction in *Erie* terms. *Smith,* therefore, has no relevance to this court's specific inquiry.

 After surveying the caselaw, the undersigned is in agreement with the majority of the judges in the Southern District of Florida that § 768.72 is a pleading statute inapplicable to Florida state law claims being litigated in federal court. Rule 9(g) of the Federal Rules of Civil Procedure, therefore, must be applied in this instance and the Defendants' argument that the Plaintiffs' punitive damage claim should be dismissed, is meritless.

### *The Long Arm of The Law*

Rule 12(g) of the Federal Rules of Civil Procedure requires a Defendant to consolidate any Rule 12(b) defenses it may have in a single pre-Answer Motion. 5A Charles Wright & Arthur Miller, Federal Practice and Procedure § 1351 (2d ed. 1990). In accordance with that rule, the Rozet, Ross and MAGI, in addition to their assertions that the Plaintiffs have failed to state a claim for which relief may be granted, have

---

13. *Compare State of Wis. Inv. Bd. v. Plantation Square Assoc.,* 761 F.Supp. 1569 (S.D.Fla.1991); *Amerifirst Bank v. Bomar,* 757 F.Supp. 1365 (S.D.Fla.1991); *Citron v. Armstrong World Industries, Inc.,* 721 F.Supp. 1259 (S.D.Fla.1989); *Benjamin Geisinger v. Armstrong World Indus.,* 1990 WL 120749, 1990 U.S. Dist. LEXIS 11061 (S.D.Fla. June 20, 1990) and cases cited therein, where the majority of judges of the Southern District of Florida have held the statute to be procedural, *with Bankest Imports, Inc. v. ISCA Corp.,* 717 F.Supp. 1537 (S.D.Fla.1989); *Lewis v. Snap–On Tools Corp.,* 708 F.Supp. 1260

(M.D.Fla.1989); *Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc.,* 719 F.Supp. 1072 (M.D.Fla. 1989); *Lancer Arabians, Inc. v. Beech Aircraft, Corp.,* 723 F.Supp. 1444 (M.D.Fla.1989) which hold the statute as substantive.

14. *NAL II, Ltd. v. Tonkin,* 705 F.Supp. 522 (D.Kan.1989); *Belkow v. Celotex Corp.,* 722 F.Supp. 1547 (N.D.Ill.1989); *Kuehn v. Shelcore, Inc.,* 686 F.Supp. 233 (D.Minn.1988); *Windsor v. Guarantee Trust Life Ins. Co.,* 684 F.Supp. 630 (D.Idaho 1988).

objected to the court's exercise of personal jurisdiction.

■ In the context of such a Motion, in which an evidentiary hearing is not held, the Plaintiff must present only a *prima facie* showing of personal jurisdiction, *Bracewell v. Nicholson*, 748 F.2d 1499, 1505 (11th Cir.1984), and the facts as alleged in the Complaint are taken as true, to the extent they are uncontroverted by the Defendants' affidavits. *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n. 3 (5th Cir.1977). Where there is a conflict in affidavits, placing different constructions on the facts, the district court should give greater weight to the Plaintiff's version, particularly when "the jurisdictional questions are apparently intertwined with the merits of the case." *Delong Equip. Co. v. Washington Mills Abrasive*, 840 F.2d 843, 845 (11th Cir.1988) (quoting *Psychological Resources Support Systems v. Gerleman*, 624 F.Supp. 483, 486–87 (N.D.Ga.1985).

■ Before a federal court may exercise *in personam* jurisdiction, there must exist a basis for the Defendant's amenability to service of process, and a constitutionally sufficient relationship between the Defendant and forum, that is, minimum contacts. *Omni Capital International Ltd. v. Rudolf Wolff & Co. Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987); *Delong*, 840 F.2d at 847.[15] As this is a diversity action, the undersigned may exercise jurisdiction over a non-resident Defendant to the extent permitted by the long-arm statute of the state in which the court sits. *Oriental Imports and Exports, Inc. v. Maduro and Curiel's*, 701 F.2d 889, 890 (11th Cir.1983). The pertinent Florida Statute, § 48.193, sets forth two manners by which a non-resident can subject himself to personal jurisdiction: (1) the Defendant performs an act enumerated in Sections 48.193(1)(a) through (h), and the claim arises from those acts; or (2) the Defendant engages in substantial and not isolated activity within the state, regardless of the connection between the activity and the claim. Section 48.193(2).

■ The United States Supreme Court has noted that there are two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414–17 n. 8, 9, 104 S.Ct. 1868, 1872–74 n. 8, 9, 80 L.Ed.2d 404 (1984). General jurisdiction arises as a result of a party's contacts to the forum state that are unrelated to the litigation. The test for "general jurisdiction" is whether the party had "continuous and systematic" general business contacts with the forum state. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952). Specific personal jurisdiction is based on a party's contacts to the forum state and the litigation arises out of or relates to those activities. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872.

■ A two-part "minimum contacts" due process analysis is used to evaluate specific personal jurisdiction issues: (1) were the Defendant's contacts with the forum state so substantial as that they could reasonably expect to be haled into a court there; and (2) would the forum state's exercise of jurisdiction violate the traditional notions of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

■ From all the allegations set forth in the Complaint and the parties' submissions, the court concludes that it has jurisdiction over Rozet, Ross and MAGI. Although it appears unclear, the Plaintiffs' allegations are seemingly a hybrid of a "alter ego-pierce the corporate veil" theory and a personal participation theory. In other words, the Defendants were personally involved in the activities which gave rise to the Plaintiffs' claims, but performed

---

**15.** Under Rule 4(e) of the Federal Rules of Civil Procedure, the trial court looks either to a federal statute or to the long-arm statute of the state in which it sits to determine whether a Defendant is amenable to service. *Omni Capital*, 484 U.S. at 104, 108 S.Ct. at 409. In the instant case, there is no objection to service of process; the objection is only to the lack of "minimum contacts" between the Defendants and the State of Florida.

their actions through alter-ego sham corporations.

The affidavits the Defendants submit in support of their Motion indicates that (1) Rozet and Ross are directors of HRM; (2) HRM became involved in the management of Kingston on November 15, 1988; (3) Rozet and Ross were not involved in the day to day operations of HRM relating to property management; (4) MAGI did not control the activities of HRM, Tuskegee or Partnership Investor Services, Inc. with respect to Kingston; and (5) MAGI took no active role in the daily activities in Kingston. These averments fail to controvert the larger scope of the Plaintiffs' allegations concerning, not only personal activity, but interlocking sham corporations, through which the Defendants may have directed their activities in the State of Florida.

 If the Plaintiffs' assertions are true, it cannot be said that the Defendants would not reasonably expect to be haled into a Florida court. The quality and nature of the asserted interstate transactions do not appear to be random, fortuitous or attenuated and the exercise of jurisdiction would not violate the traditional notions of "fair play and substantial justice." This circuit has held that as a general proposition, an individual is not personally liable for a corporation solely because of his position as an officer or director of a corporation. *Delong*, 840 F.2d at 851. Personal involvement by a corporate employee, officer or director in the wrongful activities of a corporation is sufficient to make the individual, and the corporation, substantively liable if:

> [I]t is reasonable and comports with notions of 'fair play' and 'substantial justice' to extend a forum's long-arm statute to a non-resident individual who commits an act in the forum for which he can be held substantively liable, even if his actions in and contacts with the forum were entirely in his capacity as a corporate officer or director. The crucial matter is whether the individual defendant can be held personally liable for acts committed in the forum, not whether his contacts with the forum arose in his personal capacity.

*Id.* at 851–52.

Based on the allegations contained in the Complaint, the vast majority of which is uncontroverted by the Defendants' affidavits, the undersigned finds that the Plaintiffs have presented a *prima facie* showing which satisfies the Florida long-arm statute. The Defendants' challenge to the exercise of *in personam* jurisdiction is denied.

## III. LAGNIAPPE

*You Just Haven't Earned it Yet, Baby*

 A district court should always determine *sua sponte* the propriety of its subject matter jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Bahr v. Nat'l Ass'n of Sec. Dealers, Inc.*, 763 F.Supp. 584 (S.D.Fla.1991). In light of the dismissal of the Plaintiffs' claims based on federal law, the only remaining basis of subject matter jurisdiction is diversity of citizenship. The Plaintiffs, however, have failed to properly allege an amount in controversy. Although failure to do so renders the Complaint defective, the Plaintiffs may amend accordingly to avoid dismissal. *Schlesinger v. Councilman*, 420 U.S. 738, 744 n. 9, 95 S.Ct. 1300, 1301 n. 9, 43 L.Ed.2d 591 (1975).

Based on the facts of this case, the nature of the remaining state law claims, and because the court's federal jurisdiction cannot be based on surmise or guesswork, the Plaintiffs shall have the burden of proving, by competent proof, that their claim meets the jurisdictional amount set forth in 28 U.S.C. § 1332(a).[16] *Lister v. Commissioners Court, Navarro Cty.*, 566 F.2d 490, 492–93 (5th Cir.1978). *See* 14A Charles A.

---

16. 28 U.S.C. § 1332(a) provides, in relevant part, that:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,-000 exclusive of interest in costs....

Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3702 (2d ed. 1985) ("Once challenged, the party seeking to invoke the jurisdiction of the federal courts has the burden of proving its existence by showing that it does not appear to a legal certainty that its claim is for less than the jurisdictional amount"). In doing so, the Plaintiffs are reminded that allegations concerning amount in controversy must be made in "good faith," *St. Paul Mercury*, 303 U.S. at 288, 58 S.Ct. at 590; *Lister*, 566 F.2d at 493 n. 1, and of the affirmative obligations imposed on counsel by Rule 11 of the Federal Rules of Civil Procedure.

In view of all the foregoing, it is hereby ORDERED and ADJUDGED that

(1) the Defendant's, Tuskegee, Motion to Dismiss, To Strike or in the Alternative for More Definite Statement (DE 20) is GRANTED IN PART, DENIED IN PART. Counts I, II, IV–V and IX–XVII of the Plaintiffs' Complaint are dismissed.

(2) the Defendant's, Multi–Prop, Motion to Dismiss, To Strike, or in the Alternative, for More Definite Statement (DE 46) is GRANTED IN PART, DENIED IN PART. Counts I, II, IV–V and IX–XVII of the Plaintiffs' Complaint are dismissed.

(3) the Defendants', Rozet, Ross and MAGI, Motion to Dismiss (DE 31) is GRANTED IN PART, DENIED IN PART. Counts I, II, IV–V and IX–XVII of the Plaintiffs' Complaint are dismissed.

(4) the Plaintiffs shall have twenty (20) days from the date of this order in which to file an Amended Complaint in accordance with this order. In the event they plead an amount in controversy in excess of the sum of $50,000, the Plaintiffs shall have twenty (20) days in which to show the court, by means of competent proof, that their claim exceed the jurisdictional requirement necessary for this action to proceed in federal district court. They may support this proof with a memorandum of law not to exceed ten (10) pages in length. Eleven (11) days thereafter, the Defendants may file a responsive memorandum of equal length. Said memorandums shall not be utilized to reargue positions addressed in this order.

DONE and ORDERED.

## APPENDIX A

United States District Court

Southern District of Florida

Case No. 91–6029–CIV–PAINE

KINGSTON SQUARE TENANTS ASSOCIATION, et al.,
Plaintiffs,

vs.

TUSKEGEE GARDENS, LTD., et al., Defendants.

April 16, 1991.

### ORDER REQUIRING RICO CASE STATEMENT

This matter comes before the court on its motion. In their Complaint, the Plaintiffs assert claims pursuant to the Racketeer Influenced and Corrupt Organization[s] Act ("RICO"), 18 U.S.C. § 1961[et seq.]. Under the current practice of this Judge, all parties filing RICO claims must file a RICO Case Statement.

In view of the foregoing, it is hereby ORDERED and ADJUDGED that the Plaintiffs shall file, within twenty (20) days of the date of this order, a RICO Case Statement. This Statement shall include the facts upon which the Plaintiffs are relying to initiate this RICO complaint as a result of the "reasonable inquiry" required by Rule 11 of the Federal Rules of Civil Procedure. In particular, this statement shall be in a form which uses the numbers and letters as set forth below, and shall state in *detail* and with *specificity* the following information.

(1). State whether the alleged unlawful conduct is in violation of 18 U.S.C. § 1962(a), (b), (c) and/or (d).

(2). List each Defendant and state the alleged misconduct and basis of liability of each defendant.

(3). List the alleged wrongdoers, other than the Defendants listed above, and state the alleged misconduct of each wrongdoer.

(4). List the alleged victims and state how each victim was allegedly injured.

(5). Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:

a. List the alleged predicate acts and the specific statutes which were allegedly violated;

b. Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;

c. If the RICO claim is based on the predicate offenses of wire fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Identify the time, place, and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;

d. State whether there has been a criminal conviction for violation of the predicate acts;

e. State whether civil litigation has resulted in a judgment in regard to the predicate acts;

f. Describe how predicate acts form a "pattern of racketeering activity"; and

g. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.

(6). Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:

a. State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;

b. Describe the structure, purpose, function and course of conduct of the enterprise;

c. State whether any Defendants are employees, officers or directors of the alleged enterprise;

d. State whether any Defendants are associated with the alleged enterprise;

e. State whether you are alleging that the Defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and

f. If any Defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

(7). State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

(8). Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

(9). Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

(10). Describe the effect of the activities of the enterprise in interstate or foreign commerce.

(11). If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:

a. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

b. Describe the use or investment of such income.

(12). If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

(13). If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:

a. State who is employed by or associated with the enterprise; and

b. State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).

(14). If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.

(15). Describe the alleged injury to business or property.

(16). Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

(17). List the damages sustained for which each Defendant is allegedly liable.

(18). List all other federal causes of action, if any, and provide the relevant statute numbers.

(19). List all pendant state claims, if any.

(20). Provide any additional information that you feel would be helpful to the court in processing your RICO claim.

DONE and ORDERED at West Palm Beach, Florida this 15th day of April, 1991.

/s/ James C. Paine
United States District Judge

cc: Sharon Diaz

Paul Wartelle

Michael Shienvold

Douglas Reynolds